IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 2:16-cr-85 |
| | ) | |
| RON GERARD YARBOROUGH, | ) | |
| | ) | |
| Defendant. | ) | |

POSITION WITH RESPECT TO SENTENCING

The United States of America, by and through its attorneys, Dana J. Boente, United States

Attorney for the Eastern District of Virginia and Sherrie S. Capotosto, Assistant United States

Attorney, hereby submits this Position of the United States with Respect to Sentencing Factors in

accordance with Section 6A1.2 of the Sentencing Guidelines and Policy Statements and this

Court's policy regarding guideline sentencing.   The government hereby represents that it has

reviewed the Presentence Report prepared November 10, 2016, and the Addendum prepared

December 22, 2016, and does not dispute any of the facts or Guideline factors contained therein,

with one exception: the United States believes the heroin drug weights set forth in Paragraphs 13

and 14 of the PSR should reflect a more conservative calculation based on the lab reports

resulting from two controlled purchases made by CS-6 from CS-8, rather than historical estimates

given by CS-8 in his debrief. This objection, which will be set forth in greater detail below, does

not affect the final Base Offense Level or sentencing range as calculated by the Probation

Officer. Finally, the United States will address the defendant's objection to a two-level

enhancement for "maintaining a premises" under § 2D1.1(b)(12) below.

A.   Paragraphs 13 and 14 – Drug Weight Calculations for Heroin

During the course of the investigation in this case, agents conducted three controlled buys of heroin during August-September of 2014 from CS-8, prior to his arrest. Agents believed, based on phone analysis, that the defendant was supplying CS-8 with heroin. The first controlled buy was conducted on August 14, 2014, and it came back from the lab as 3.5 grams of heroin. The second controlled buy was conducted on August 29, 2014, and came back from the lab as "no controlled substance."   The third controlled buy was conducted on September 24, 2014, and came back from the lab as 10.7 grams of heroin.   CS-8 was arrested in December of 2014, and later gave a debrief wherein he estimated that he received 2 ounces of heroin from the defendant during this same time period. Based on the fact that one of the controlled buys came back as "no controlled substance," the United States respectfully submits that CS-8's estimate of 2 ounces is a less-reliable method for calculating the heroin attributable to the defendant, and submit that a more conservative figure would instead be based on the actual substances seized and tested at the lab.

B.   Paragraph 23 – "Premises" Enhancement § 2D1.1(b)(12)

Section 2D1.1(b)(12) provides for a 2-point enhancement if a defendant "maintained a premises for the purpose of manufacturing or distributing a controlled substance." Application Note 17 provides that the enhancement should be applied to a defendant who "knowingly maintains a premises (i.e., a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution." Further, §2D1.1 Application Note 17 provides as follows:

2

> *Among the factors the court should consider in determining whether the defendant "maintained" the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to or activities at the premises. Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.*

Clearly, the application of this enhancement is fact driven, and should be analyzed on a case-by-case basis. Unfortunately, there is scant case law (published or unpublished) on this particular topic in the Fourth Circuit. However, a canvass of cases from the Fourth Circuit and surrounding Circuits yields some insight into the quantity and quality of facts necessary to support (or fall short of) this enhancement, as set forth in greater detail below.

(i)   <u>Case Law</u>

In *United States v. Carter*, 834 F.3d 259 (3rd Cir. 2016), the Third Circuit held that the enhancement <u>should apply</u> based on the following facts: (1) while the defendant, who lived in another state, neither owned nor personally leased the residence used to sell heroin, he controlled the funds that were used to pay rent; (2) the defendant controlled activities at a second residence used to store and package heroin; (3) the defendant controlled the activities of "employees" who manned each of the residences; and (4) narcotics were recovered at both locations pursuant to search warrants.

In *United States v. Moore*, 553 Fed.Appx. 345 (4th Cir. 2014) [*unpublished decision*], the Fourth Circuit found that the enhancement <u>should apply</u> based on the following facts: (1) Over a 6-month period, confidential informants made six purchases of crack cocaine from the defendant

3

at his trailer, and during two of those transactions, the defendant was actively cooking cocaine powder into cocaine base; (2) the defendant's sister (who lived nearby) testified that the defendant provided her with crack cocaine on a regular basis; (3) the defendant obtained 10-18 ounces of powder cocaine at least once per week and cooked it into crack at his trailer; and (4) a search of the trailer yielded scales, plastic baggies, "cooking" apparatus, a crack pipe, and firearms.

In *United States v. Christian*, 544 Fed.Appx. 188 (4th Cir. 2013) [*unpublished decision*], the Fourth Circuit found that the enhancement should apply based on the following facts: (1) while the defendant did not live at the residence, he traveled regularly between the residence and a separate location where he distributed drugs; (2) the defendant had a key to the residence and stayed there regularly, but not exclusively; (3) the defendant "controlled" a chest and a safe in the master bedroom which contained money, drugs, and two firearms; (4) a friend of the defendant's lived at the residence at least part-time with her son, but received her mail elsewhere; and (5) a search yielded spoons and bowls with cocaine residue consistent with crack cocaine being manufactured at the residence.

In *United States v. Romans*, 823 F.3d 299 (5th Cir. 2016), the Fifth Circuit held that the enhancement should apply based on the following facts: (1) the defendant provided the capital to start a paint and body shop operated by a third party; (2) the defendant paid the monthly rent for the location; (3) the defendant's primary use of the body shop was to receive and distribute large quantities of marijuana; (4) the defendant had no role in the legitimate operations of the body shop; and (5) at the defendant's direction, boxes of marijuana were taken to the shop for further

delivery to his customers.

In *United States v. Morales-Ortuno*, 879 F.Supp.2d 608 (E.D. Texas, July 23, 2012), the District Court held that the enhancement should not apply based on the following facts: (1) the defendant rented and controlled a residence where 180 grams of cocaine was seized pursuant to a search warrant; (2) the defendant rented the residence (and a second residence) using a pseudonym; (3) two controlled buys of cocaine were conducted with co-defendants at different locations within a week of each other after the defendant moved into the residence; (4) the defendant did not participate in those controlled buys; and (5) the police had not observed any suspected drug activity at the residence

In *United States v. Johnson*, 737 F.3d 444 (6th Cir. 2013), the Sixth Circuit held that the enhancement should apply based on the following facts: (1) over an 8-month period, the defendant stored 1200 pounds of marijuana in at least one room of his house; (2) co-conspirators were seen picking up large quantities of drugs from the defendant's home on three occasions; and (3) a search of the residence yielded 237 pounds of marijuana, a firearm, scales, and $15,000 in cash.

In *United States v. Miller*, 698 F.3d 699 (8th Cir. 2012), the Eighth Circuit held that the enhancement should apply to both the defendant and his wife, based on the following facts: (1) the husband and wife lived in the residence and controlled access to the property; (2) the husband participated in four controlled buys of methamphetamine; (3) the husband admitted he distributed massive quantities of methamphetamine over a six year period; (4) the husband told customers they could pick up quantities of drugs at unusual locations on the property; (5) the wife

5

participated in three controlled buys at the residence; (6) the wife admitted accepting payments

that she knew were for methamphetamine purchases at the residence on previous occasions.

Finally, in a §2255 decision, this Honorable Court previously noted (without deciding

whether the two-level enhancement should have applied on the facts of the underlying criminal

case) that defense counsel was not remiss in failing to object to the enhancement where (1) the

Petitioner owned a home and controlled access to the premises, and (2) a search of the home

yielded a significant quantity of cocaine, $34,000 and two firearms. *See*, *United States v. Rowsey*,

71 Fed.Supp.3d 585, 612 (E.D. Virginia, Dec. 29, 2014).

(ii)   Facts

At the outset, it is important to note that the great majority of cases dealing with the

applicability of the "Premises" enhancement under §2D1.1(b)(12) involve defendants who use

their own residences (or those of others) for drug dealing. In the instant case however, the

"premises" in question is a recording studio on Arrowhead Drive in Virginia Beach rather than a

private home. The United States has evidence that the defendant, along with other co-defendants,

shared access to the recording studio, and that they used it for both legitimate business (music

and video production) as well as illegitimate business, i.e., a place to conduct drug transactions

and avoid police scrutiny. In addition, the United States has evidence that the lease for the

recording studio was in the name of Deangelo Hyman, a co-defendant, however we do not have

information as to who paid the rent. Unlike most of the cases cited above, the United States did

not execute a search warrant at the studio, and therefore did not recover any direct evidence of

drug dealing activity associated with the studio other than surveillance of several controlled buys

6

that occurred in the parking lot of the building in August and September of 2015 between CS-6 and CS-8. However, with respect to the "frequency" aspect of §2D1.1(b)(12) analysis, the Statement of Facts in this case contains twelve separate instances of drug dealing activity involving the defendant that occurred in or around the music studio between early 2012 and June of 2015. (See Paragraphs 12, 16, 19, 20, 21, 22, 28, 31, 32, 47, 49, and 61 of the Statement of Facts). Based on the foregoing facts and circumstances, the United States respectfully submits that there is sufficient evidence to support the two-level enhancement under §2D1.1(b)(12).

    C.  <u>Argument</u>

The United States believes that the Sentencing Guidelines establish a reasonable sentencing range that appropriately accounts for the relevant factors set forth in 18 U.S.C. § 3553(a) and requests that this Court impose a sentence within that range. The Guideline range is appropriate and reasonable in light of the serious nature of the drug trafficking crime to which the defendant pled guilty, the duration of the conspiracy, and the amount of cocaine (roughly 9½ kilograms), crack cocaine (807 grams), and heroin (16.2 grams) attributable to the defendant and the fact that firearms were involved. In addition, the defendant's lengthy criminal record dates back to 1996, when he was 18 years old, and includes at least four previous drug convictions, several assault convictions, and numerous probation violations. Use of cocaine, crack cocaine and heroin continues to be a serious problem in our local communities and throughout the nation. A sentence within the Guideline range would reflect the seriousness of this offense, promote respect for the law, provide just punishment for the offense, and deter further criminal conduct by both the defendant and others. *See* 18 U.S.C. §§ 3553(a)(2)(A), (B) and (C). The defendant, who is 38 years old, would benefit from higher education and vocational training while incarcerated,

as well as substance abuse treatment and counseling. The maximum possible sentence is life in prison, with a minimum mandatory sentence of 120 months by statute. The defendant's advisory guideline range is 235-293 months (roughly 15½ to 24½ years).

The United States respectfully submits that a sentence within the above-referenced advisory guideline range is both appropriate under the facts of this case, and would satisfy the provisions of 18 U.S.C. §3553(a).

Respectfully submitted,

DANA J. BOENTE
UNITED STATES ATTORNEY

By:  _____/s/_____
Sherrie S. Capotosto
Assistant United States Attorney
Virginia State Bar No. 33127
Attorney for the United States
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
Ph: (757) 441-6331
Fax: (757) 441-6689
Sherrie.Capotosto@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 28th day of December 2016, I caused a true and correct copy of the foregoing Position on Sentencing to be e-mailed to: United States Probation Officer Cathleen C. Yetzer, 600 Granby Street, Suite 200, Norfolk, Virginia 23510, and I electronically filed the foregoing Position on Sentencing with the Clerk of Court using the CM/ECF system, which will

send a notification of such filing (NEF) to counsel for the defendant, Melinda S. Glaubke, Esq.,

2476 Nimmo Parkway, Suite 121, Virginia Beach, Virginia 23456.


_____/s/_____
Sherrie S. Capotosto
Assistant United States Attorney
Virginia Bar No. 33127
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Tel: (757) 441-6331
Fax: (757) 441-6689
Sherrie.Capotosto@usdoj.gov